UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------------------------------- X
                                                        :
FELIX TROCHE,                                           :
                                                        :
                              Petitioner,               :      **MEMORANDUM**
                                                        :      **DECISION AND ORDER**
                  - against -                            :
                                                        :       19-cv-2825 (BMC)
     JAMIE LaMANNA,                                      :
                                                        :
                              Respondent.                :
------------------------------------------------------- X
```

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court conviction for first degree rape, three counts of first degree criminal sexual act, two counts of second degree assault, first degree unlawful imprisonment, two counts of forcible touching, and third degree assault, for which he was sentenced to imprisonment totaling 35 years. The facts will be set forth below as necessary to respond to each of petitioner's points of error, but to summarize, petitioner, accompanied by three fellow members of the Latin Kings gang, entered a room in a drug house and assaulted a male drug dealer who was smoking crack with the female victim. Petitioner then physically and sexually assaulted the female victim. When the victim fled the house, she re-encountered petitioner and his fellow gang members, who brought her back to the house, where petitioner physically assaulted her again, and then sodomized and raped her.

Reprising the points that he made on appeal, petitioner's habeas corpus petition asserts two evidentiary errors; the improper release of a juror on the second day of trial; insufficiency of the evidence; ineffective assistance of trial counsel; and an unduly harsh sentence. As discussed

below, these claims are either not cognizable on habeas corpus review, procedurally barred, or insufficient to meet the standard for relief under the Anti-Terrorism and Effective Penalty Act, 28 U.S.C. § 2254 ("AEDPA").

## I. Evidentiary Errors

### A. References to Gang Membership

#### 1. Background

The pretrial hearing court ruled that, subject to a limiting instruction, the prosecution would be permitted to introduce evidence at trial showing that petitioner was a member of the Latin Kings gang so that the jury would understand the relationship between petitioner and his accomplices who were testifying as cooperating witnesses. The hearing court stated its holding as follows:

> Turning to the issue of testimony concerning the alleged gang affiliation of the cooperating witnesses as well as alleged gang affiliation of the defendant. While gang membership is not directly related to the crimes charged, in other words, it does not go to motive or intent concerning the charged crimes, I do find that in a very limited way it is relevant solely as a contention of the People to explain the relationship between the defendant and the cooperating witnesses. This issue can be fully explored in cross-examination. A limiting charge will be given to the jury. Number 1, that this is solely the contention of the People and that any alleged gang membership in any event is not evidence of the crimes charged. The issue is also raised I believe in the defendant's statement to the police. There is reference to gang affiliation and aliases. I would emphasize this is a narrowly tailored ruling limited solely as to the relationship between these parties. I do not want to hear any testimony concerning historical gang issues, hierarchy, etc., merely if the People wish that according to these cooperating witnesses Mr. Troche was in a position, a superior position or a boss, nothing more, no crown.

At trial, cooperating witnesses were permitted to testify how long they had been in the Latin Kings and their street names, and they were permitted to refer to petitioner by his street name (one of them did not know petitioner by any other name). One of the witnesses testified that he had been inducted into the Latin Kings by doing a drive-by shooting. The trial court gave

the limiting instruction in its ruling after each cooperating witness. There was no objection to the testimony or the instruction at trial.

On appeal, petitioner contended that this testimony had deprived him of a "fair trial" based on several Appellate Division cases (almost all of which in fact sustained the admission of gang membership evidence). The Appellate Division rejected the argument, holding:

> The defendant has failed to preserve for appellate review this challenge to the extent that he currently argues that the trial testimony on that matter exceeded the scope of the County Court's pretrial ruling. In any event, while the admission of some of the evidence may have been improper, any such error was harmless, as there was overwhelming evidence of the defendant's guilt, and there was no significant probability that the jury would have acquitted the defendant had it not been for the error.

People v. Troche, 159 A.D.3d 735, 737, 72 N.Y.S.3d 126, 129 (2nd Dep't 2018) (internal citations omitted), leave to appeal den., 31 N.Y.3d 1153, 83 N.Y.S.3d 435, reconsideration den., 32 N.Y.3d 1008, 85 N.Y.S.3d 767 (2018) (table).

2. **Analysis[1]**

The Appellate Division's affirmance is partially based on a procedural bar – the failure to object to some of the evidence exceeding the hearing court's ruling – as well as a substantive holding – that although some of this "excessive" evidence was erroneously admitted, any error was harmless. In some cases, the failure of the Appellate Division to specify which evidence fell into each category requires the federal district court on habeas review to either make that analysis, or if an ambiguity leaves the federal court unable to determine with certainty that the Appellate Division disposed of a claim as procedurally barred, it must presume that the state

---

[1] I am assuming that petitioner properly exhausted a federal constitutional claim that the introduction of this evidence violated his right to due process of law under the Fourteenth Amendment, albeit barely. Although the point was argued solely as a matter of state law, the last sentence of petitioner's brief on this point stated, "appellant was denied a fair trial and his right to due process of law guaranteed under the 14th Amendment of the Constitution of the United Sates and Art. I, §6 of the New York Constitution." See Abdurrahman v. Henderson, 897 F.2d 71, 73 (2d Cir. 1990).

court disposed of the claim on the merits.  See Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Harris v. Reed, 489 U.S. 255, 265 (1989)).

In this case, however, petitioner was quite clear on direct appeal as to which gang testimony he was challenging: (1) the violent manner in which one of the cooperators was inducted into the Latin Kings (i.e., the drive-by shooting); (2) multiple witnesses were permitted to testify to their own gang affiliations; and (3) petitioner's street name of "Beast" was referenced by more than one cooperating witness.  Except for the reference to "Beast," which it appears the hearing court may have intended to allow, the Appellate Division held that these references may have been improper as exceeding the hearing court's ruling, but if they were, they were harmless error.

The Supreme Court has outlined the standard for federal habeas corpus review of state court findings of harmless error in Brecht v. Abrahamson, 507 U.S. 619, 638 (1993); Fry v. Pliler, 551 U.S. 112 (2007); Davis v. Ayala, 135 S. Ct. 2187 (2015), and, most recently, McWilliams v. Dunn, 137 S. Ct. 1790 (2017).  This standard subsumes the deferential review standard applicable under AEDPA.  When a federal court reviews a state court finding of harmless error beyond a reasonable doubt under AEDPA, "a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable."  Fry, 551 U.S. at 119 (emphasis in original).  And a state-court decision is not unreasonable if "'fairminded jurists could disagree' on the correctness of that decision."  Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Thus, it is not enough to afford relief in this situation if the federal habeas court merely finds a "reasonable possibility" that the error was harmful.  Davis, 135 S. Ct. at 2198.  Rather, relief is only available "if the federal court has grave doubt about whether a trial error of federal

law had a substantial and injurious effect or influence in determining the jury's verdict." Id. at 2198 (internal quotation marks and citations omitted). This conclusion, in turn, must be supported by a finding that the petitioner "was actually prejudiced by the error." Id. (quoting Calderon v. Coleman, 525 U.S. 141, 146 (1998) (*per curiam*)).

Petitioner faced several bigger problems with the evidence in this case than the references to gang membership. The victim's description of her torture and rape was painfully graphic. Her outcry to her mother and others was prompt – she called her mother and her mother came quickly to find the victim crying, hysterical, and in blood-spattered clothes. She was badly bruised the next day. Petitioner's sperm DNA was found on her underwear by a ratio that eliminated all reasonable doubt, even though petitioner lied to the police, denying that he had sex with the victim (as well as denying being a member of the Latin Kings or having a nickname of "Beast"). Cooperating accomplices also testified that petitioner not only performed the charged conduct but that as the leader of this group, he successfully encouraged the others to join him in the gang rape.

Under the circumstances, I do not have "grave doubt" that the gang references were harmless error, accepting, as I must, the Appellate Division's finding that they were error at all. In fact, I do not see even a reasonable possibility that the jury reached an erroneous verdict based on this evidence, nor that fair-minded jurists could disagree about that. I therefore will not disturb the harmless error determination of the Appellate Division.

### B.    Prompt Outcry Witnesses

The Appellate Division also relied, in part, on the harmless error rule in rejecting petitioner's argument that the trial court allowed too many witnesses to testify as to petitioner's consistent statements after she was attacked. The harmless errors consisted of allowing the

victim's mother to testify about what she (the mother) had relayed to the police that her daughter had said to her shortly after the attack. I suppose that is error as it is hearsay, but since it was not error to allow the mother to testify directly as to what her daughter told her promptly after the attack, it was merely cumulative, which must be among the most harmless kinds of harmless error. The Appellate Division also found error in allowing a witness to testify as to what the victim had told him of the attack several days after it occurred as not prompt enough.

Other than these two errors, which it found to be harmless for the same reasons it rejected the argument about gang affiliation (i.e., the overwhelming evidence of guilt), the Appellate Division rejected on the merits petitioner's main point that one or two too many witnesses were allowed to corroborate the victim's description of the attack by testifying as to what she told them shortly after it occurred.

There are multiple problems with petitioner's argument. First, it would be difficult to find in any case that multiple prompt outcry witnesses were so unfairly prejudicial that the trial court abused its discretion in allowing them. That was particularly true in this case, where the victim's credibility was subjected to severe attacks, and where her traumatized memory and history of drug abuse yielded several inconsistencies in her testimony.

More fundamentally for our purposes, however, this point was not raised as a federal constitutional claim either in the state courts or in petitioner's habeas corpus petition. Unlike the gang affiliation point, where petitioner at least made a passing reference to the 14th Amendment, he made such no reference with regard to this argument. Rather, this point was argued and is argued here solely as a matter of state law, i.e., that the trial court abused its discretion as defined by state precedent (even though virtually all of the state court precedent that petitioner cited upheld the introduction of the evidence). There was no citation to a single federal case, let alone

a Supreme Court case, nor was the analysis within the traditional scope of federal constitutional litigation. See generally Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982). The Appellate Division was not on notice that petitioner was raising any kind of constitutional claim.

This Court does not sit to review errors of state evidentiary law, see Estelle v. McGuire, 502 U.S. 62, 67 (1991), and petitioner has argued no more than that. Petitioner's point is therefore rejected as not cognizable on federal habeas corpus review.

## II.     Premature Discharge of Juror

At the commencement of the second day of trial, the trial court advised the parties that one of the jurors had called in ill, reporting vomiting all night and continuing that morning. The juror reported that he would not be able to appear for at least that day. The trial court announced its intention, under N.Y. C.P.L. § 270.35 – the so-called "two hour rule" – to excuse the juror after two hours and substitute an alternate. Defense counsel objected and moved to continue the trial until the next trial day to see if the juror had recovered. The trial court overruled the objection, finding that it was not in the interests of justice or the victim to prolong the trial when there were qualified alternate jurors available.

On appeal and in his habeas corpus petition, petitioner contended that excusing the juror was reversible error. Although the heading of his brief point referenced "the United States Constitution Article I [*sic*][2] §2," and he included a sentence that "a defendant has a constitutional right to a trial by a particular jury chosen according to law . . . ," the argument was based entirely on the alleged misapplication of N.Y. C.P.L. § 270.35 and state cases construing it. That statute sets forth a procedure for excusing and replacing jurors during trial after two hours, and as a state

---

[2] This should have been a reference to Article III.

law provision, its alleged violation is not cognizable on habeas corpus review. See DeJesus v. Superintendent of Attica Correctional Facillity, No. 17-cv-3932, 2017 WL 6398338, at *21 (S.D.N.Y. Dec. 13, 2017) (citing Green v. Kirkpatrick, No. 16-CV-1407, 2017 WL 4174794, at *3 (N.D.N.Y. Sept. 19, 2017); Forino v. Lee, No. 10-CV-5980, 2016 WL 7350583, at *9 (E.D.N.Y. Dec. 19, 2016); Powell v. Kaplan, No. 12-CV-00954, 2016 WL 2925979, at *5 (W.D.N.Y. May 19, 2016)). Nevertheless, under the liberal standard of exhaustion applied within the Second Circuit, see Abdurrahman, 897 F.2d at 73, I will assume that petitioner has properly exhausted a federal constitutional claim that he was deprived of his right to a jury trial under the Sixth Amendment and Article III, Section 2, as his appellate counsel attempted to at least reference those provisions.

The Appellate Division rejected this claim on the merits: "[T]he County Court did not err in discharging a seated juror upon its finding, after a reasonable inquiry, that the juror would be unable to appear within two hours of the time set for trial to continue." Troche, 159 A.D.3d at 737, 72 N.Y.S.3d at 128. The Appellate Division's rejection of the parallel constitutional claim alluded to in petitioner's brief on the merits is implicit in this holding. See Johnson v. Williams, 568 U.S. 289, 299 (2013).

This means that my review of the issue is subject to the limitations of AEDPA. AEDPA permits reversal only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal

quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . ." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 88 (quoting Yarborough, 541 U.S. at 664). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'").

There is no Supreme Court precedent cabining a trial court's discretion to replace an ill juror with an alternate early in the trial. The closest authority may be the general requirement for the composition of the jury in Williams v. Florida, 399 U.S. 78, 100 (1970), that "the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." That broad standard was not violated by the trial court's substitution here. Petitioner has not and could not

argue that there was anything prejudicial about this early substitution of a qualified alternate juror for a sick juror.

What the Third Circuit noted over 20 years ago in the context of replacement during deliberations is still the case, not only about juror replacement during deliberations, but also replacement during trial: "The Supreme Court has not specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations have begun." Claudio v. Snyder, 68 F.3d 1573, 1575 (3d Cir. 1995). Since the Appellate Division's decision to uphold the replacement of the juror was not contrary to or an unreasonable application of any Supreme Court decision, petitioner's point is rejected.

## III. Insufficiency of Evidence

Petitioner had a perfunctory point in his brief on direct appeal, and he raises it again in this habeas corpus petition, that the evidence was legally insufficient to support the verdict or, alternatively, that the verdict was against the weight of the evidence. The essence of his argument was that the witnesses who gave incriminating testimony against petitioner were not credible.

Although he again makes a passing reference to the due process clause incorporated in the 14th Amendment and cites a Supreme Court decision (In re Winship, 397 U.S. 358 (1970)), the majority of the point was an appeal to the Appellate Division's interest of justice jurisdiction, asking it to weigh the evidence and order a new trial. Of course, it is firmly established that whether the verdict is against the weight of the evidence is purely a question of state law, not cognizable on federal habeas corpus review. See, e.g., Mobley v. Kirkpatrick, 778 F. Supp. 2d 291, 311 (W.D.N.Y. 2011) ("Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues

cognizable in a habeas proceeding.") (citing, *inter alia*, <u>Ex parte Craig</u>, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . . ")); <u>Correa v. Duncan</u>, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A weight of the evidence argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles . . . .  Accordingly, the Court is precluded from considering the claim.") (internal quotation marks and citations omitted).  Nevertheless, once again, because he cited to the Constitution and used the term "legally insufficient," I will consider him to have exhausted his federal constitutional claim.  <u>See</u> <u>Daye</u>, 696 F.2d at 191.

The Appellate Division rejected his legal insufficiency argument because petitioner "failed to preserve [it] for appellate review . . . ."  <u>Troche</u>, 159 A.D.3d. at 738, 72 N.Y.S.3d at 129-30 (citations omitted).  It also found, alternatively, that "there was ample evidence corroborating the accomplice testimony here and, viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt."  <u>Id.</u> at 738, 130 (citations omitted.).

I need not consider the Appellate Division's alternative holding on the merits, however, because its primary holding that petitioner's claim was unpreserved for appellate review erects a procedural bar to further review in this Court.  A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment."  <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)) (emphasis omitted).  When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the

state court's decision.  See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 193 (2d Cir. 2007).  State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state.  Murden, 497 F.3d at 193 (quoting Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)).

Further, if a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative.  See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original).

The Appellate Division's holding that the claim was procedurally barred was firmly in line with New York law.  At the conclusion of the prosecution's case, petitioner's attorney simply stated, "[j]ust briefly to move to dismiss at this time for failure to make out a *prima facie* case."  It is well established under New York law that a general objection at the close of the prosecution's case, not stating specific grounds, will not preserve a particular argument as to why the evidence was insufficient.  See N.Y. Crim. Proc. L. § 470.05(2); Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) (general objection not sufficient because, as "New York's highest courts uniformly instruct," to preserve a claim, a defendant must "specifically focus on the alleged error") (collecting state court authority).  The trial court was given no notice of the credibility argument that petitioner later raised on appeal.

Once it is determined that a claim is procedurally barred under state procedural rules, however, a federal court may still review such a claim on the merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750; Harris, 489 U.S. at 262. The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that . . . the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray, 477 U.S. at 488) (alteration in original). However, the ineffective assistance claim must itself have been exhausted in the state court. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. Daye, 696 F.2d at 191.

Although, as shown below, petitioner raised a claim of ineffective assistance of trial counsel, he never contended that his trial counsel was ineffective for failing to preserve the point of legal insufficiency. He therefore cannot rely on ineffective assistance of counsel to avoid the procedural bar, see Edwards, 529 U.S. at 451-52, and the record suggests no other avenue of establishing cause for the default or prejudice.

Nor is this a case of miscarriage of justice. As described above, there was overwhelming evidence of petitioner's guilt.

## IV.    Ineffective assistance of trial counsel

After one of the cooperators, Robert Campbell, had testified against petitioner, Campbell made a statement to petitioner in the holding area in front of two other inmates, in which Campbell apologized for lying on the stand to inculpate petitioner, but said that he had felt compelled to do so because of his cooperation agreement.  Campbell told petitioner that he was ready to return to court and recant.

This was relayed to the trial court by petitioner's defense counsel, along with a request to recall Campbell and the two inmates who had overhead the conversation.  The parties agreed to continue with the trial and recall Campbell and the two inmates the next day.  However, the next morning, Campbell's attorney came to court.  Campbell's attorney advised the trial court that "if he's recalled as a witness [Campbell will testify] that his prior testimony was truthful and that he did speak to other inmates and told them that it was not truthful, but he did that let's say for fear of his own safely."  In other words, according to Campbells' attorney, Campbell had lied in front of the other inmates to lessen the chance that he would suffer harm in prison as a cooperating witness.  But if recalled, he would not recant.

At that point, petitioner's attorney withdrew his request to recall Campbell and the two inmates.  Among other things, petitioner's attorney advised the trial court that "I've consulted with the defendant who consents to my withdrawal of that request as well.  Overall, I think it is counterproductive."

Petitioner contended on appeal that the withdrawal of the request constituted ineffective assistance of trial counsel which denied him his right under the Constitution to confront Campbell.  The Appellate Division rejected the claim on the merits: "The defendant failed to

demonstrate that his trial counsel's decision not to call a certain witness who had already testified for the prosecution lacked a 'legitimate,' 'strategic' basis. . . . Furthermore, trial counsel's strategic decision in this regard did not deny the defendant his right to confront an adverse witness." Troche, 159 A.D.3d at 738, 72 N.Y.S.3d t 129. Because the Appellate Division decided this claim on the merits, my review of its decision is subject to the deferential standard under AEDPA discussed above.

Petitioner comes nowhere near to meeting that standard. To prove ineffective assistance of counsel, petitioner must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The first prong requires him to show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. I must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (citation and internal quotation marks omitted). The second prong requires petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 669. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112.

It is patently obvious why counsel made the wise decision not to recall Campbell. If Campbell were to testify as his lawyer said he would, it might well have appeared to the jury that petitioner's superior position had intimidated Campbell into disclaiming willing cooperation. It would show petitioner's influence over Campbell. It would corroborate the evidence that petitioner was the leader in the crimes charged against him.

Thus, to refer to recalling Campbell as "counterproductive," as petitioner's counsel did when he withdrew his request, was something of an understatement. In light of the advice from Campbell's lawyer, it was probably the only objectively reasonable decision to make; petitioner would have had a better argument for ineffective assistance if his counsel had maintained his request to recall Campbell and Campbell had testified consistently with his lawyer's representations to the court.

The Appellate Division's rejection of this point was not contrary to or an unreasonable application of <u>Strickland</u> and its progeny. This was just the kind of strategic call that able trial counsel is supposed to make. Because petitioner's attorney reasonably made the decision not to recall Campbell, there is no Confrontation Clause issue. <u>Cf.</u> <u>Paulino v. Zenk</u>, No. 02 CIV. 2735, 2008 WL 356849, at *10 (S.D.N.Y. Feb. 7, 2008) (finding no Confrontation Clause issue where counsel made a strategic decision not to re-cross-examine Government's key witness).

## V. Excessive Sentence

Petitioner's sentence was well within the range of sentences available under state law, imposed for the commission of depraved and heinous acts. When the sentence is within the range of sentences prescribed by state law and that prescription does not shock the judicial conscience, no cognizable issue is presented on federal habeas corpus review. <u>See</u> <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992). There is nothing shocking about this sentence given the particulars of the crime.

## CONCLUSION

The petition is denied, and the case is dismissed. The Clerk is directed to enter judgment against petitioner. A certificate of appealability shall not issue as the petition presents no substantial constitutional issue. <u>See</u> 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and

therefore *in forma pauperis* status is denied for the purpose of an appeal.  <u>See</u> <u>Coppedge v.</u>

<u>United States</u>, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**


_____
U.S.D.J.


Dated:  Brooklyn, New York
        June 26, 2019